Charles GLOVER, Appellant (Plaintiff),

v.

STATE of Wyoming, Appellee (Defendant).

No. 92–258.

Supreme Court of Wyoming.

Oct. 13, 1993.

Harold F. Buck of Buck Law Offices, Cheyenne, for appellant.

Josephine T. Porter, Sr. Asst. Atty. Gen., Cheyenne, for appellee.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN, and TAYLOR, JJ.

MACY, Chief Justice.

Appellant Charles Glover appeals from the district court's order granting a summary judgment in favor of Appellee State of Wyoming. The district court found that Glover did not exhaust his administrative remedies after he was dismissed as a permanent employee for the State.

We affirm.

Glover presents the following issues for our review:

### ISSUE ONE

Did the State, in adopting its personnel rules, prescribe as exclusive that all matters as to their interpretation be left to an administrative hearing authority?

### ISSUE TWO

Does the doctrine of exhaustion of administrative remedies apply where the remedy is neither mandatory nor the administrative agency one vested with particular expertise?

Glover began working for the State in 1984. He was employed in a number of positions from that time through 1990. During this period, he worked both indoors and outdoors. He had experienced severe frostbite before he began working for the State, and, as a consequence, he was hypersensitive to cold temperatures and experienced pain when he was exposed to cold weather conditions.

Because of his medical condition, Glover met with the director of the Department of Administration and Information (the department) in January 1991 and requested that he be transferred to a position where his duties would allow him to work indoors. Glover also requested that the new position not conflict with his night job at the Holiday Inn.

In order to accommodate Glover's request, the director reassigned him to an entry level position as a bindery technician in the central duplicating section of the department. Glover began working as a bindery technician on Friday, February 1, 1991. As the bindery technician with the least seniority, he was required to make deliveries outdoors during cold weather.

Glover called in sick on Monday, February 4, 1991, his second day of working as a bindery technician. Later that same day, he talked with the director and indicated that he could not continue working as a bindery technician because he was required to make outdoor deliveries during cold weather. After a discussion, the director gave Glover three options: He could (1) return to his job as a bindery technician; (2) take a position on the night crew; or (3) quit. Glover refused the first two alternatives and would not quit, so the director fired him effective immediately.

Soon thereafter, the director learned that he did not have authority under the personnel rules to fire Glover without following the proper procedures. In order to conform with the personnel rules, the director sent Glover a notice of his intent to dismiss him from State service. The notice set forth the reasons for the dismissal, reiterated the first two employment options, and informed Glover that he had ten working days in which to respond to the notice and that he was suspended with pay during the dismissal review period.

On February 26, 1991, Glover responded to the notice by requesting that he be allowed to perform his bindery technician job without making outdoor deliveries. On February 28, 1991, the director sent a letter to Glover, terminating his employment with the State. He specifically informed Glover that he had the right to file an appeal to his

dismissal in accordance with the personnel rules.

Glover did not file an appeal within the administrative scheme. Instead, he filed an action in the federal district court, alleging that his due process rights had been violated. The federal district court granted a summary judgment in favor of the State.

On April 20, 1992, Glover filed a complaint in the state district court, alleging that his due process rights had been violated by the dismissal and that the State had breached its employment contract with him. The State filed a motion for a summary judgment. Following a hearing on the motion, the district court granted a summary judgment in favor of the State. Glover had earlier conceded that his constitutional and due process claims were barred by the doctrines of res judicata and collateral estoppel because of the federal court decision. As to the remaining issues, the district court held that the personnel rules set forth the terms of Glover's employment and his remedies upon being terminated and that, since Glover did not follow the proper procedure by filing an appeal to the dismissal decision, he failed to exhaust his administrative remedies and, therefore, was barred from bringing an action in the district court. Appellant appeals from the district court's order.

Glover presents two closely related arguments. First, he argues that the administrative procedure for filing an appeal to a personnel decision, as articulated in the rules and statutes, was neither mandatory nor exclusive. He contends that the district court had jurisdiction to hear the case and that he was not required to pursue his administrative remedies. In support of his argument, he makes a distinction between original jurisdiction and primary jurisdiction. He also argues that, if this Court interprets the rules and statutes to require him to obtain administrative review first, the district court would be denied its constitutional jurisdiction under Article 5, Section 10 of the Wyoming Constitution.

In Glover's second argument, he states that the doctrine of exhaustion of administrative remedies did not apply because the remedy provided by the rules was not mandatory and the department was not vested with any particular expertise in personnel matters. He contends that the district court confused the doctrine of exhaustion of administrative remedies with the doctrine of primary jurisdiction.

Glover's arguments address the related doctrines of exhaustion of administrative remedies and primary jurisdiction. This Court explained the two doctrines in *People v. Fremont Energy Corporation*, 651 P.2d 802, 810–11 (Wyo.1982) (quoting *United States v. Western Pacific Railroad Company*, 352 U.S. 59, 63–64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956)):

> "The doctrine of primary jurisdiction, like the rule requiring exhaustion of administrative remedies, is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. 'Exhaustion' applies where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course. 'Primary jurisdiction,' on the other hand, applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views."

We first consider the doctrine of exhaustion of administrative remedies and its application in this case. The decision to decline jurisdiction because a party failed to exhaust his administrative remedies is vested in the sound discretion of the trial court. *Union Pacific Resources Company v. State*, 839 P.2d 356, 366 (Wyo.1992).

This Court defined the doctrine of exhaustion of administrative remedies in *Fremont Energy Corporation:*

> The exhaustion doctrine applies where an agency alone has been granted or found

to possess exclusive jurisdiction over the case. The purpose of the doctrine then is to avoid premature interruption of the administrative process where the agency has been created to apply a statute in the first instance.

651 P.2d at 811. The reasons for applying the exhaustion doctrine are apparent:

A primary purpose is, of course, the avoidance of premature interruption of the administrative process. The agency, like a trial court, is created for the purpose of applying a statute in the first instance. Accordingly, it is normally desirable to let the agency develop the necessary factual background upon which decisions should be based. And since agency decisions are frequently of a discretionary nature or frequently require expertise, the agency should be given the first chance to exercise that discretion or to apply that expertise. And of course it is generally more efficient for the administrative process to go forward without interruption than it is to permit the parties to seek aid from the courts at various intermediate stages. The very same reasons lie behind judicial rules sharply limiting interlocutory appeals.

*McKart v. United States*, 395 U.S. 185, 193–94, 89 S.Ct. 1657, 1662–63, 23 L.Ed.2d 194 (1969) (reversing 395 F.2d 906 (6th Cir. 1968)). We conclude that the department possessed exclusive jurisdiction over State personnel matters until the available administrative remedies had been exhausted.

The Legislature charged the department with the personnel management responsi-

bilities for the State of Wyoming. Wyo. Stat. §§ 9–2–1002(d)(iii)[1] and 9–2–1022[2] (Supp.1990). To that end, the Legislature directed the department to promulgate rules concerning discipline, grievances, and appeals. Section 9–2–1022(a)(xi)(C). Wyo. Stat. § 9–2–1019(a) (1991) provides for the appointment of a personnel review board to conduct personnel appeal hearings in accordance with the contested case procedures provided in the Wyoming Administrative Procedure Act. The Wyoming Administrative Procedure Act states that a party who obtains a final ruling after a contested case hearing has been held is entitled to have judicial review of the decision. Wyo.Stat. § 16–3–114(a) (1990). However, judicial review is available only after the administrative remedies have been exhausted. *Id.* Thus, the department possessed exclusive jurisdiction over State personnel matters, and exhaustion of the administrative remedies was required before judicial review was available.

■ Glover agreed to follow the administrative procedure as a condition of his employment with the State. "[A] right to continued employment can be created by statute, rules and regulations enacted pursuant to statute, or by rules and regulations having the force of a contract." *Chasson v. Community Action of Laramie County, Inc.*, 768 P.2d 572, 575 (Wyo. 1989). The personnel rules set out the conditions for the dismissal of a State employee and the procedure to be followed in petitioning for a review of the dismissal decision.[3] The personnel rules gave a per-

---

1. Amended by 1991 Wyo.Sess.Laws ch. 29, § 3 effective April 1, 1991.

2. Amended by 1991 Wyo.Sess.Laws ch. 29, § 3 effective April 1, 1991; by 1992 Wyo.Sess.Laws ch. 71, § 1 effective March 17, 1992; and by 1993 Wyo.Sess.Laws ch. 80, § 1 and ch. 183, § 1 effective July 1, 1993.

3. (c) Dismissal.
 (i) Dismissal of Permanent Employees. If previous disciplinary action has not served to achieve corrective results, or if the nature and extent of the employee's behavior is such that other disciplinary action is not appropriate, the agency head may dismiss a permanent employee for the good of the service.

(A) Prior to the dismissal of a permanent employee the agency head shall provide to the employee written notification specifying:
 (I) The reason(s) and evidence for dismissal; and
 (II) An opportunity for the employee within ten (10) working days to respond in writing to the charge(s).
The agency head shall have three (3) working days to consider the response. If the agency head perceives that the employee's presence on the job may be detrimental to the operation of the agency, the agency head may suspend the employee, with pay, pending the dismissal review period.
 (B) If after the dismissal review period the agency head determines dismissal is appropri-

manent employee [4] the right to have continued employment and the right to be dismissed only for cause. However, the regulatory provisions did not benefit the employee alone. When an employee begins work, he accepts the terms of the contract and is bound by them. *See Diedrich v. City of Ketchikan*, 805 P.2d 362 (Alaska 1991).

Glover agreed to the terms of the personnel rules upon accepting employment with the State. The rules provided: "The Hearing Authority shall have original jurisdiction in all hearings which involve the dismissal or the reduction in force of a permanent employee." PERSONNEL RULES OF THE EXECUTIVE BRANCH OF WYOMING STATE GOVERNMENT ch. XII, § 2(f) (1989). *See also id.* Appendix, Definition No. 33.

Additionally, the personnel rules provided that an employee could file a petition for review within twenty days after he had received a notice of dismissal. However, "[i]f an employee does not petition for review within the time prescribed, there shall be no other or further right to appeal, and the dismissal or the reduction in force shall stand." *Id.* ch. XII, § 7(a).

■ Administrative rules are interpreted in the same manner as statutes are. We endeavor to ascertain the underlying intent of the rule or regulation. *International Association of Fire Fighters, Local No. 279 v. Civil Service Commission of Fire Department of City of Cheyenne*, 702 P.2d 1294, 1297 (Wyo.1985). We conclude that the intent of the personnel rules was to

place exclusive jurisdiction in the department until all administrative remedies had been exhausted. Glover agreed to these terms as a condition of his employment and was, therefore, bound by them. The district court did not abuse its discretion in holding that Glover was required to exhaust his administrative remedies.

■ We turn next to the doctrine of primary jurisdiction. Under that doctrine, both the court and the administrative agency have jurisdiction to hear the matter. "Primary jurisdiction is a doctrine of common law, wholly court-made, that is designed to guide a court in determining whether and when it should refrain from or postpone the exercise of its own jurisdiction so that an agency may first answer some question presented." 4 KENNETH CULP DAVIS, ADMINISTRATIVE LAW TREATISE § 22:1 at 81 (2d ed. 1983). *See also Union Pacific Resources Company*, 839 P.2d at 365; and *Kearney Lake, Land & Reservoir Company v. Lake DeSmet Reservoir Company*, 487 P.2d 324 (Wyo.1971) (supplementing 475 P.2d 548 (Wyo.1970)). Because we have determined that the exclusive jurisdiction over State personnel matters rested with the department until the available administrative remedies had been exhausted, primary jurisdiction was necessarily vested in the agency.

■ Finally, Glover argues that, by jurisdiction being placed in the administrative agency, the district court was denied its rightful jurisdiction under Article 5, Section

---

ate, the agency head shall provide, personally or by return receipt requested certified mail, written notification to the employee specifying:

(I) The reason(s) for the dismissal;
(II) The effective date of the dismissal; and
(III) The right to a hearing pursuant to these rules.

A copy of the notice of dismissal shall be sent to the Personnel Division by the agency head. PERSONNEL RULES OF THE EXECUTIVE BRANCH OF WYOMING STATE GOVERNMENT ch. XI, § 3(c)(i) (1989). The personnel rules provided the procedure to be followed in petitioning for review of a dismissal decision:

(a) Within twenty (20) days of receipt of a notice of dismissal or a reduction in force, a permanent employee may file a petition for review with the Personnel Administrator. The petition shall include a brief statement of the events giving rise to the dismissal or the reduction in force and the relief sought. Copies of the petition shall be sent to the employing agency and the Attorney General. If an employee does not petition for review within the time prescribed, there shall be no other or further right to appeal, and the dismissal or the reduction in force shall stand. *Id.* ch. XII, § 7(a).

4. Both parties represent that Glover was a permanent employee. For the purposes of this decision, we presume that Glover was a permanent employee, but we offer no opinion as to whether he was properly classified as such.

10 of the Wyoming Constitution. That provision provides in relevant part:

The district court shall have original jurisdiction of all causes both at law and in equity and in all criminal cases, of all matters of probate and insolvency and of such special cases and proceedings *as are not otherwise provided for.*

Wyo. Const. Art. 5, § 10 (emphasis added). Thus, the constitution specifically recognizes and allows the vesting of jurisdiction in entities other than the district courts. The Legislature properly placed jurisdiction over State personnel matters with the department. The district court's jurisdiction was not unconstitutionally limited.

Glover was required to exhaust his administrative remedies before seeking relief from the district court. Because he failed to seek review within the administrative scheme, the district court properly granted a summary judgment in favor of the State.

Affirmed.